Ms. Jennifer Love, Chief Counsel Arkansas Workers' Compensation Commission 324 Spring Street Post Office Box 950 Little Rock, AR 72203-0950
Dear Ms. Love:
I am writing in response to your request for my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), regarding the possible release of certain records under the Arkansas Freedom of Information Act ("FOIA"), A.C.A. §§25-19-101 through -109 (Repl. 2002 Supp. 2003 Acts 2005, Nos. 259, 1994 and 2003). My statutory duty under A.C.A. § 25-19-105(c)(3)(B) is to determine whether the decision of the custodian of records as to the release of personnel or evaluation records is consistent with the FOIA.
You report that you have been asked to produce "[a]ll personnel or employment files" of two attorneys employed by the Arkansas Workers' Compensation Commission (the "AWCC"). You further report that you have provisionally determined to withhold from disclosure the following records:
1. The employees' withholding exemption certificate[s];
2. A 1992 W4;
3. Insurance enrollment applications;
4. Primary care physician change forms;
 5. Records except salary including bonuses, career service, holiday and sick pay as contained on the AASIS remuneration statement which we deem disclosable;
6. Direct deposit authorizations;
 7. Requests for verification of employment which contains [sic] banking information;
8. Credit authorizations; and
9. Cop[ies] of driver's licenses.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2003). Given that the subjects of the request are both state employees — namely, attorneys employed by the Arkansas Workers' Compensation Commission (the "AWCC") — I believe documents containing the requested information clearly qualify as "public records" under this definition.
As my predecessor noted in Op. Att'y Gen. No. 99-305:
 If records fit within the definition of "public records". . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law. The" unwarranted invasion of personal privacy" exemption is found in the FOIA at A.C.A. § 25-19-105(b)[12]. It exempts from public disclosure "personnel records to the extent that disclosure would constitute clearly unwarranted invasion of personal privacy."
 . . . The FOIA does not define the term "personnel records." Whether a particular record constitutes a "personnel record," within the meaning of the FOIA is, of course, a question of fact that can only be determined upon a review of the record itself. However, the Attorney General has consistently taken the position that "personnel records" are all records other than employee evaluation and job performance records that pertain to individual employees, former employees, or job applicants. See, e.g., Op. Att'y Gen. No. 99-147, citing Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd Ed., 1998) at 134.
Accord, Ark. Op. Att'y Gen. No. 2001-122.
In my opinion the records itemized above are "personnel records" for purposes of the FOIA. Under the relevant statute, A.C.A. § 25-19-105, "personnel records" are open to public inspection and copying, except to the extent that disclosure would constitute "a clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2003).
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase and adopted a balancing test to determine if it applies, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice,308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the custodian must disclose the personnel records. As the court noted in Young:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
However, as the court noted in Stilley v. McBride, 332 Ark. 306, 312,965 S.W.2d 125 (1998), when "there is little relevant public interest" in disclosure, "it is sufficient under the circumstances to observe that the employees' privacy interest in nondisclosure is not insubstantial." Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Id. at 313.
Having set forth the test that applies in determining whether to release a particular personnel record, I will now review your provisional decision to withhold certain documents:
1. The Employees' Withholding Exemption Certificate[s]
I agree that these documents are not subject to disclosure. As I noted in Ark. Op. Att'y Gen. No. 2004-167:
 This office has . . . taken the position that some types of benefit information are not disclosable. These are the types of information that were referenced in Opinion No. 1997-189, which was relied upon by the custodian of the records in declining to respond to your request. More specifically, this office has taken the position that records reflecting personal details about insurance coverage and tax withholding are generally not releasable.
I will further note that state income tax records are exempt from disclosure pursuant to A.C.A. § 25-10-105(b)(1).
2. A 1992 W4
As I noted in Ark. Op. Att'y Gen. No. 2003-385: "[I]t is my opinion, consistent with previous Attorney General Opinions, that . . . records reflecting federal tax information and withholding are exempt from public inspection and copying. See, e.g., Op. Att'y Gen. 2001-112 (and opinions cited therein)."
3. Insurance Enrollment Applications
I again agree with your analysis as to these documents. My predecessors have repeatedly opined, and I fully concur, that insurance records are exempt from disclosure on privacy grounds. See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-112; 2000-129; 1995-110 and 1987-442.
4. Primary Care Physician Change Forms
In my opinion, the public interest in the disclosure of such forms is minimal and the employees' interest in the confidentiality of the information contained in such forms is significant. Accordingly, I concur in your decision to withhold these documents.
5. Records Except Salary Including Bonuses, Career Service, Holiday andSick Pay as Contained on the AASIS Remuneration Statement which We DeemDisclosable
This description as written is not entirely clear. I gather from my inquiries that you intend to redact from the payroll records only tax information of the sort I have identified above as being exempt from disclosure. I agree with your decision to redact this information.
I further agree that records related to salary are subject to disclosure. As my immediate predecessor stated in Ark. Op. Att'y Gen. No. 98-126:
 [S]alary information is clearly subject to disclosure, as such information does not constitute a "clearly unwarranted invasion of personal privacy." See Ops. Att'y Gen. 96-205, 95-242, 95-070, and 94-198. This office, however, has also opined that documents related to insurance coverage, tax withholding, and payroll deductions (as well as similar records that would divulge intimate financial details) should be excised from otherwise releasable documents. See Ops. Att'y Gen. 95-242, 94-235, 91-093, and 87-422. Accordingly, such information, including" total deductions" and "net pay," should be excised. . . .
6. Direct Deposit Authorizations
I agree with your provisional decision as to these records. In authorizing a direct deposit, an employee typically provides a void check that reflects the employee's bank-account routing number and, frequently, his home address. In my opinion, the public interest in access to such information is minimal, whereas the employee's privacy interest therein is not insubstantial. Accordingly, I believe the information should be withheld under the Stilley test described above. I will further note that the home addresses of nonelected state employees are exempt from disclosure pursuant to A.C.A. § 25-19-105(b)(13); accord
Ark. Ops. Att'y
Gen. Nos. 2003-115 and 2002-087.
7. Requests for Verification of Employment Which Contains [sic] BankingInformation
This office has repeatedly opined that it would be inappropriate to release any documents containing intimate financial details. See Ark. Ops. Att'y Gen. Nos. 2003-320; 2001-112; 98-173; 98-126; 95-242; 94-235; 91-093; and 87-422. Accordingly, I believe you should at the least redact any banking information from the requests for verification of employment. I am unaware of what additional information these documents contain, and I can consequently offer no further opinion other than that you should apply the standard set forth above in determining what portions of the documents you should disclose.
8. Credit Authorizations
My inquiries reveal that this description refers to documents relating to an application for an extension of credit. Again, I agree that the public interest in disclosure of this information is minimal and the employee's interest in its nondisclosure is not insubstantial. I therefore agree with your decision to withhold this document.
9. Cop[ies] of Driver's Licenses
I concur in your tentative decision not to produce these documents.
I base this opinion in part on the possibly applicable provisions of the Driver's Privacy Protection Act of 1994, 18 U.S.C.A. 2721 through -2725 (Repl. 2000 Supp. 2005) (the "DPPA"), which prohibits a state department of motor vehicles from releasing "personal information" contained in a "motor vehicle record" except for specified purposes. SeeReno v. Condon, 528 U.S. 141, 144 (2000) (generally discussing this prohibition). Complying with a state FOIA request is not listed among these purposes. Included within the category of "motor vehicle records" is "any record that pertains to a motor vehicle operator's permit."18 U.S.C.A. § 2725(1). The DPPA defines the term "personal information" as any information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," but not including "information on vehicular accidents, driving violations, and driver's status."18 U.S.C.A. § 2725(3). Subsection 2721(b)(1) authorizes the release of personal information to "any government agency . . . in carrying out its functions . . ." — a description that may apply to the AWCC's possession of the driver's licenses in question. Subsection 2721(c) provides in part that "[a]n authorized recipient of personal information . . . may . . . redisclose the information only for a use permitted under subsection (b). . . ." Conspicuously absent among the permissible uses itemized in subsection 2721(c) is disclosure pursuant to a state FOIA request. With respect to disclosing the zip codes, as noted above, A.C.A. §25-19-105(b)(13) prohibits releasing the home addresses of state employees. Given that a zip code is part of a home address, I believe this statute precludes disclosure of this information.
In my opinion, the DDPA will apply in this case only if the AWCC obtained the copies of the driver's licenses from the Department of Motor Vehicles. See 18 U.S.C.A. § 2721(a); O'Brien v. Quad Six, Inc.,219 F.Supp. 2d 933 (N.D. Ill. 2002) (holding that the DDPA does not apply to the dissemination of personal information obtained from a private party). In the event the AWCC obtained the licenses from another source, such as the employees themselves, I believe the driver's licenses should nonetheless be withheld under the balancing test applicable to personnel records. The public interest in obtaining another individual's driver's license is negligible, and the individual's interest in keeping confidential the information set forth on a driver's license is substantial.
You have provided me only with a description of the documents you intend to withhold, all of which appear to constitute personnel records. However, I should note that certain documents contained within the files might constitute "employee evaluations or job performance records" as referenced in the FOIA. A.C.A. § 25-19-105(c)(1). The FOIA does not define the phrase "employee evaluation or job performance records," nor have the courts found occasion to do so. The Attorney General has consistently taken the general position that documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, and letters related to promotions and demotions are "employee evaluations or job performance records." See,e.g., Ops. Att'y Gen. Nos. 2005-162; 2005-094; 2001-203; 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303. This office has also taken the position that records that were generated as part of an investigation into allegations of the misconduct of an employee and that detail incidents that gave rise to an allegation of misconduct should be deemed the "employee evaluation/job performance records" of that employee. See
Ops. Att'y Gen. Nos. 2005-162; 2005-112; 2001-063; 2000-231; 2000-203; 2000-130; 1999-361; and 1999-359.
The FOIA dictates that employee evaluations be released only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
As custodian, you will need to review any documents you determine to be employee evaluation/job performance records under this standard. With respect to the second criterion listed above, this office has concluded on various occasions that any document up to and including a notice of suspension or termination that details the reasons for the disciplinary action should be deemed to have "formed a basis" for that action. See,e.g., Ark. Ops. Att'y Gen. Nos. 2005-176, 2005-112, 2005-030, 2003-381, 2002-158, 2002-144, 97-415, and 95-171. With respect to the third criterion, the FOIA at no point defines the phrase "compelling public interest." However, two leading commentators on the FOIA have provided some guidelines for making the factual determination whether such an interest exists. See J. Watkins R. Peltz, The Arkansas Freedom ofInformation Act (m m Press, 4th ed. 2004). The authors state, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Id. at 205. They further observe: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. at 204, 205. Elaborating on this point, they remark: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 207. They additionally note that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 206 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue."). However, Professors Watkins and Peltz note that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the `cop on the beat' is just as important as the chief of police." Id. at 207. The question of whether there is a compelling public interest in particular records is clearly one of fact that must be determined in the first instance by you, as the custodian of the records, considering all of the relevant information on a case-by-case basis.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JHD/cyh